# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 43 | **DATE** | 8/6/2002 |
| **CASE TITLE** | Keane vs. METRA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, the Court denies defendant's motion for summary judgment (15-1) as to Counts 1 and 2, but grants the motion as to Count 3. The final pretrial order date is extended to 10/31/02. The case is referred to Magistrate Judge Schenkier for the purpose of conducting a settlement conference.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 1 2 2002 | |
| | Notified counsel by telephone. | date docketed | 29 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS\
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND KEANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 01 C 43 |
| ) | |
| NORTHEAST ILLINOIS COMMUTER ) | |
| RAILROAD CORPORATION, d/b/a ) | |
| METRA - METROPOLITAN RAIL, ) | DOCKETED |
| ) | |
| Defendant. ) | AUG 1 2 2002 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Raymond Keane filed suit against defendant Northeast Illinois Commuter Railroad Corporation, d/b/a Metra - Metropolitan Rail ("Metra") alleging that Metra is liable under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §51 *et seq.*, for an injury he sustained at work. Count 1 arises under the Federal Safety Appliance Act ("FSAA"), 45 U.S.C. §20301 *et seq.*; Count 2 arises under the Locomotive Inspection Act ("LIA"), also known as the Boiler Inspection Act ("BIA"), 49 U.S.C. §20701 *et seq.*; and Count 3 arises under the Railroad Safety Act ("RSA"), 49 U.S.C. §20101 *et seq.* Metra has moved for entry of summary judgment in its favor on all counts. For the reasons set forth below, the motion is denied with respect to Counts 1 and 2, but granted with respect to Count 3.

## FACTUAL BACKGROUND

Keane works for Metra as a locomotive engineer. On November 1, 2000, he began his shift at 6:00 p.m. at Metra's Blue Island facility. One of his first tasks was to release the



handbrake on Metra locomotive No. 1 ("NIRC #1") by turning the handle/wheel in a clockwise direction. Keane made three attempts to release the handbrake, without success. On his fourth attempt, the brake released, but he felt a shooting pain in the center of his neck. Keane wrote up a report describing the defective condition of the handbrake and left it on the locomotive, as required by Metra. Keane did not immediately notify his supervisor about the problem with the handbrake or his injury, but he did fill out a Metra Employee Incidental Injury/Illness Report before leaving work. Later that evening around 11:30 p.m., Keane called Metra headquarters to report the incident to a Trainmaster, but no one was available at that hour. Keane apparently asked for a second Employee Incidental Injury/Illness Report, which he completed and faxed to Metra headquarters sometime thereafter.

Metra claims that notwithstanding Keane's written reports, it first learned of the incident with the handbrake on the afternoon of November 2, 2000. The following morning, Richard Pickens, a foreman in Metra's Mechanical Department, applied and released the handbrake on NIRC #1 five times without any problem. Keane worked on November 4 and 5, 2000 and did not report any difficulty with the handbrake on either day. On November 7, Robert Sajdak, Locomotive Shop Superintendent of the Rock Island District, and Mechanical Foreman John Montgomery both applied and released the handbrake ten times without any problem.

The parties dispute whether the handbrake had a defect which caused it to malfunction on November 1, 2000. They also dispute whether Keane's surgery on April 23, 2001 was necessitated by the alleged incident with the handbrake.

## DISCUSSION

### A. The Statutory Framework

Under the FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. §51. The intent of the FELA is to provide broad remedial measures for railroad employees. *Lisek v. Norfolk and Western Railway Co.*, 30 F.3d 823, 831 (7th Cir. 1994). In an FELA action, the railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury." *Id.* at 832 (internal quotations and citations omitted). Although the plaintiff's burden is significantly lighter than in an ordinary negligence case, evidence of the defendant's negligence must be presented in order to survive a motion for summary judgment. *Id.*

The FELA is a general negligence statute and as such, it neither prohibits nor requires specific conduct by a railroad. *Waymire v. Norfolk and Western Railway Co.*, 218 F.3d 773, 775 (7th Cir. 2000). By contrast, the FSAA and LIA impose absolute duties to provide safe equipment. *DeBiasio v. Illinois Central Railroad*, 52 F.3d 678, 683 (7th Cir. 1995) (FSAA); *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 216 (7th Cir. 1994) (BIA, also known as LIA). The FSAA and LIA do not themselves create private rights of action, but employees alleging injury resulting from a violation of these statutes may sue under the FELA. *Crane v. Cedar Rapids & Iowa City Railway Co.*, 395 U.S. 164, 166 (1969). Thus, an employee may recover under the FELA for injuries resulting in whole or in part from a railroad carrier's

3

negligence or from its violation of the FSAA or LIA. *O'Donnell v. Elgin, Joliet and Eastern Railway Co.*, 338 U.S. 384, 391 (1949); *Crane*, 395 U.S. at 166.

## B. Metra's Violation of the FSAA and LIA

The FSAA and LIA are regarded as amendments to the FELA which provide additional public protection and facilitate employee recovery. *Urie v. Thompson*, 337 U.S. 163, 189, 191 (1949). A violation of the FSAA or LIA constitutes negligence *per se* under the FELA. *Id.* at 188-89. A plaintiff seeking to recover under either of these two statutes "need not show that an improper or unsafe operation was caused by negligence; proving the improper or unsafe operation 'is effective to show negligence as a matter of law.'" *Richardson*, 17 F.3d at 216 (quoting *Urie*, 337 U.S. at 189); *Lisek*, 30 F.3d at 825-26.

The FSAA requires that a locomotive be equipped with "efficient handbrakes." 49 U.S.C. §20301, 20302. The LIA requires that "all parts and appurtenances [of a locomotive be] in proper condition and safe to operate." 49 U.S.C. §20701. Keane argues that Metra violated its obligations under both of these statutes by failing to provide a locomotive with a safe and efficient handbrake. A handbrake is "efficient" for purposes of the FSAA if it functions in the "normal, natural and usual manner." *Meyers v. Reading Co.*, 331 U.S. 477, 483 (1947).

Keane claims that on November 1, 2000, he climbed onto the locomotive and reached out with his right hand to release the handbrake, which the parties agree can generally be done easily with one hand. Pl. Mem., p. 2; Def. Reply, p. 3. The brake would not move, so Keane put two hands on the wheel and tried a second time to release the brake, again without success. His third attempt was similarly unavailing. The brake released on Keane's fourth attempt, but he claims that he injured his neck in the process of turning the wheel. Pl. Mem, p. 2. *See, e.g., Williams v.*

4

*Norfolk Southern Railway Co.*, 126 F. Supp. 2d 986, 993 (W.D. Va. 2000) ("[s]tuck hand brakes qualify as 'inefficient' under the FSAA").

Metra denies Keane's account of events, emphasizing that he was the only witness to the alleged problem with the handbrake. Def. Reply, pp. 1, 7. Keane's own testimony, however, is sufficient to create a genuine issue of fact. Metra also notes that the handbrake was functioning properly before and after November 1, 2000. Def. Mem. ¶13; Def. Reply, p. 6. But this does not demonstrate as a matter of law that the handbrake was working in its normal, natural and usual manner at the time Keane was injured. *See Richardson*, 17 F.3d at 217 (defendant "would be liable if the hand brake did not properly function at the time of the incident, regardless of whether it worked properly before and after"); *Meyer*, 331 U.S. at 483. If the handbrake was not working in its usual manner, Metra is liable for Keane's injury, assuming that he can establish causation. *Crane*, 395 U.S. at 166 (plaintiff "is not required to prove common-law proximate causation but only that his injury resulted 'in whole or in part' from the railroad's violation of the [FSAA]"); *DeBiasio*, 52 F.3d at 683 ("[o]nce the violation is established, only causal relation is in issue"); *Robb v. Burlington Northern and Santa Fe Railway Co.*, 100 F. Supp. 2d 867, 871 (N.D. Ill. 2000). On that point, Metra expressly concedes that there is an issue of fact as to "the cause of

the plaintiff's medical condition that resulted in his surgery."[1] Def. Reply, pp. 2-3. Accordingly, summary judgment is not appropriate on Keane's FSAA or LIA claims.

C.  **Metra's Negligence Under the FELA**

Keane does not clearly allege an independent FELA claim in his complaint; in fact, he states in his response brief that because this case is brought under the FSAA, LIA and RSA, "[t]he issue of railroad 'negligence' is simply not involved." Pl. Mem., p. 10. Nevertheless, both parties address whether Metra was negligent under the Act by ignoring reports that the handbrake was in poor condition and in need of repairs. The Court agrees that Keane has raised a genuine issue of fact on this point as well.

Keane argues that Metra knew the handbrake on NIRC #1 was defective prior to November 1, 2000 but did nothing to fix it. Specifically, on October 6, 2000, a Metra mechanic performed a Federal Railroad Administration-mandated Annual Inspection of the locomotive and reported 30% wear on the handbrake chain. On October 28, 29 and 30, 2000, Metra performed Daily Inspections and noted that the brake condition was "poor." And on November 1, 2000, the

---

[1] Metra also argues that Keane caused his own injury by attempting to force the handbrake to release in violation of Metra procedures. Def. Mem. ¶11. At best, this raises either a question of contributory negligence, which is not a valid defense to claims for violation of the FSAA and LIA, see Robb, 100 F. Supp. 2d at 871 n.3 (rejecting argument that plaintiff's injury was caused by his violation of safety rules as opposed to a defective handbrake; "defendant cannot get around [the FSAA's rule of absolute duty] by presenting what is for all practical purposes a contributory negligence defense as a causation argument"), or a question of fact as to whether Keane was the *sole* cause of his injury. See Walden v. Illinois Central Gulf Railroad, 975 F.2d 361, 364 (7th Cir. 1992) ("[p]roof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or part to the injury"). Either way, this argument provides no basis to grant summary judgment to Metra.

6

day of Keane's injury, the brakes and brake rigging were again described as being in poor condition. Throughout this time, Metra made no repairs to the handbrake or any of its parts.

Metra denies that the reports demonstrate any defect with respect to the handbrake and argues that it had no actual or constructive knowledge of the alleged problem. Def. Mem. ¶¶7-10. According to Metra, the chain showing 30% wear on October 6, 2000, was unrelated to the mechanism involved in releasing the handbrake. However, the Annual Inspection report, which was apparently completed by mechanics Jim Jones, Doug Wagner and Ed Greer, does not clearly identify which handbrake chain is at issue. And the only testimony on this point is from Locomotive Shop Superintendent Sajdak and machinist Michael Kowalski, neither of whom was involved in preparing the reports, and both of whom speculate as to which chain the three mechanics meant. Kowalski Dep., pp. 36-37; Sajdak Dep., pp. 84-86; PX. B.

Metra does not dispute that the Daily Inspections all indicate that the condition of the brakes and brake rigging was poor, but argues that none of the reports identifies any specific problem with the handbrake; to the contrary, the reports indicate that the carman signed off on the boxes for "renew brake shoes and adjust rigging where needed," and "operation of horn-bell-sanders, window wipers, handbrake, air brakes, air compressor operation." Def. Reply, p. 4. Nevertheless, this arguable inconsistency in the stated condition of the handbrake raises a question of fact for a jury to resolve. *Compare Williams*, 161 F.3d at 1063 (defendant had no actual or constructive knowledge of defect in railroad car door because plaintiff failed to show that the door was in need of repair, or that defendant could have discovered and fixed the defect).

Metra next suggests that Keane "was the sole and proximate cause of his alleged injury" because he tried to force the handbrake to release in violation of Metra procedures. Def. Mem.

¶11. But this argument, which is more properly characterized as a contributory negligence defense, also raises a jury question. *See, e.g., Taylor v. Burlington Northern Railroad Co.*, 787 F.2d 1309, 1314 (9th Cir. 1986) ("[t]he question of how much of the injury is attributable to the employee's own actions and lack of due care for his own condition is to be decided by the jury if there is any evidence at all of contributory negligence"). Moreover, the FELA is a comparative negligence statute, so even if Keane was somehow negligent in forcing the handbrake, that would only serve to reduce the amount of his damages. *See Williams*, 161 F.3d at 1061; *Bomboir v. National Railroad Passenger Corp.*, 902 F. Supp. 160, 162 (N.D. Ill. 1995); *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994); 45 U.S.C. §53.

Metra also contends that it is entitled to summary judgment on Keane's FELA claim because he failed to report the problem with the handbrake in a prompt manner and, as a result, it was not tested and inspected at the time of the alleged incident. Def. Reply, pp. 8-9. It is not clear how this argument, if true, would warrant a judgment in Metra's favor. If anything, it raises additional questions as to the condition of the handbrake at the time of Keane's injury. The mere fact that Metra did not learn about the incident at the moment it occurred does not address whether the railroad had prior notice of a potential defect in the handbrake, nor does it establish that the handbrake was functioning properly. Keane's alleged delay in reporting the incident may cast some doubt on his version of events, but his credibility is a jury question. *Ritchie v. Glidden Co.*, 242 F.3d 713, 722 (7th Cir. 2001) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Metra finally challenges the qualifications of Keane's expert witness, David Engle, Jr., and his conclusion that the handbrake was defective because it did not operate efficiently as required by FRA regulations. Def. Reply, pp. 9-13. The Court has not relied on Engle's opinion in finding that there are issues of fact in this case and need not address Metra's arguments here. The parties may raise any future objections to expert witnesses in the form of motions *in limine*.

**D.    Keane's RSA Claim**

Keane does not make any specific argument with respect to his RSA claim. After generally noting that the RSA empowers the Secretary of Transportation to implement railroad safety regulations and that the Secretary has done so with respect to locomotive engine handbrakes, Keane merely asserts in his concluding paragraph that the defective handbrake "violated . . . the very nature of the FRSA." Pl. Mem., pp. 8, 14. Without more than this, Keane has failed to demonstrate a genuine issue of fact as to whether Metra violated the RSA, and summary judgment is granted on Count 3 of his complaint.

## CONCLUSION

For the reasons stated above, the Court denies defendant's motion for summary judgment [docket item 15-1] as to Counts 1 and 2, but grants the motion as to Count 3. The final pretrial order date is extended to October 31, 2002. The case is referred to Magistrate Judge Schenkier for the purpose of conducting a settlement conference.

/s/ Matthew Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date:   August 6, 2002